UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNIFER MILLER,

    Plaintiff,

v.                                                 Case No. 06-10841

YAZAKI NORTH AMERICA, INC.,          Honorable Patrick J. Duggan

    Defendant.
_____/

## OPINION

Jennifer Miller ("Plaintiff") filed this lawsuit against Yazaki North America, Inc. ("Defendant"), pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, seeking life insurance benefits allegedly due to her as beneficiary of her deceased ex-husband's insurance policy. In her complaint, Plaintiff asserts a breach of fiduciary duty claim based on Defendant's alleged failure to inform her deceased ex-husband of his right to convert his group life insurance coverage to individual coverage and Defendant's alleged misrepresentation of benefits available under the life insurance policy. A bench trial on this action was held on October 23, 2006.

## BACKGROUND FACTS

The following relevant facts are undisputed. Plaintiff's ex-husband, Lowell Thomas Miller (Miller), began employment with Defendant on January 23, 1995. Defendant's employees receive life insurance benefits provided by UNUM Life Insurance Company

(UNUM). While employed, Defendant's employees are included in a group life insurance plan entitling named beneficiaries to monetary amounts based on the deceased employee's earnings. The policy covering employees, including Miller, provided that if an employee is on a leave of absence, the employee will be covered for up to 20 days following the date the leave of absence begins. The policy also provides a procedure to continue life insurance coverage after the 20-day period and specifically provides that the employee can convert coverage to an individual policy without evidence of insurability. Defendant is the plan administrator and named fiduciary of the life insurance policy.

While employed with Defendant, Miller served in the United States National Guard. On November 8, 2004, Miller submitted a Request for Leave of Absence seeking military leave to serve in Iraq. Miller's requested leave was to begin on November 14, 2004 and his estimated date of return was March 1, 2006. Miller died in combat on August 31, 2005.

Prior to taking his leave of absence, Plaintiff was the named beneficiary on the group life insurance policy. Miller did not apply for or obtain the individual coverage that was available to employees after they had been on leave for more than 20 days. On September 23, 2005, UNUM made a payment in the amount of $170,000.00 to Plaintiff. On October 7, 2005, UNUM informed Plaintiff that this payment was made in error and that Miller's coverage under the group life insurance plan had lapsed. Plaintiff appealed the denial of benefits and the appeal was denied on November 2, 2005. UNUM denied her this benefit because Mr. Miller had not obtained the individual coverage.

## DISCUSSION

I. **Duty and Breach of Fiduciary Duty**

Plaintiff's breach of fiduciary duty claim is asserted under two different theories. First, Plaintiff contends that she is entitled to the amount of the life insurance, to wit $170,000.00, from Defendant because Defendant breached its fiduciary duty to her ex-husband by failing to provide him with information regarding his right to obtain individual coverage in the event of a leave of absence in excess of 20 days. Second, Plaintiff contends that Defendant breached its fiduciary duty by providing misleading information to Miller about his right to obtain individual coverage.

The Sixth Circuit in *Krohn v. Huron Memorial Hosp.*, 173 F.3d 542 (6th Cir. 1999), explained the duties owed by an ERISA-fiduciary to plan participants. The *Krohn* panel explained that an ERISA-fiduciary has a duty to inform. *Krohn*, 173 F.3d at 548. An ERISA-fiduciary's "duty to inform is a constant thread in the relationship between beneficiary and trustee, it entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful." *Id.* (quoting *Bixler v. Central Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3d Cir. 1993)).

**A. Affirmative Duty to Inform**

The affirmative duty to inform requires that the fiduciary "give complete and accurate information in response to a participants' questions . . . ." *Drennan v. General Motors Corp.*, 977 F.2d 246, 251 (6th Cir. 1992). The deposition testimony, read into the record by Defendant, of Eileen Stone and Donna Gonzalez, Yazaki Benefits Representatives, revealed that Miller never asked questions about his life insurance. (Tr. at 50-51). Thus, because Miller never asked a question about his life insurance or expressed his confusion in any way,

3

Defendant's affirmative duty to inform was never triggered.

Plaintiff also argued that Defendant breached a fiduciary duty by never providing the Summary Plan Description[1] to Miller. In essence, Plaintiff argued that the positive duty to inform is predicated upon the plan administrator's obligation to furnish the Summary Plan Description in the first instance. In support of her argument, Plaintiff referred to ERISA's statutory requirement that certain plan-related documents be furnished to participants and beneficiaries. This requirement provides in relevant part:

> Publication of the summary plan descriptions and annual reports shall be made to participants and beneficiaries of the particular plan as follows:
>
> **(1)** The administrator shall furnish to each participant, and each beneficiary receiving benefits under the plan, a copy of the summary plan description, and all modifications and changes referred to in section 102(a)(1) of this title –
>
> **(A)** within 90 days after he becomes participant, or (in the case of a beneficiary) within 90 days after he first receives benefits, or
>
> **(B)** if later, within 120 days after the plan becomes subject to this part.

29 U.S.C. § 1024(b).

Plaintiff offered the deposition testimony of two Yazaki Benefits Representatives to support her argument. In her deposition taken on August 2, 2006, Eileen Stone testified that when she was hired by Yazaki in June of 1999, Yazaki had an orientation on employer provided benefits. (Tr. at 41). Ms. Stone testified that although she was not provided with a Summary Plan Description concerning life insurance benefits, she believes that she signed

---

[1] The Summary Plan Description is described in detail in 29 U.S.C. § 1022. It must include the information set forth in 29 U.S.C. § 1022(b), and must "be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." *Id.* § 1022(a).

4

a form which stated that a copy of the Summary Plan Description was available in the benefits department if needed. (Tr. at 43). Furthermore, she testified that the content of the Summary Plan Description "would be made available to the employees on the intranet." (Tr. at 43).

Plaintiff then offered the deposition testimony of Donna Gonzalez, another Yazaki Benefits Representative, whose deposition was taken on October 2, 2006. She testified that she had participated in the benefits orientation meetings with new employees at Yazaki and that what is discussed at a benefits orientation meeting "would be your health packages when you start, where to find the summary plan description, just the basic kind of summary of what Yazaki benefits would include." (Tr. at 46). She further testified that the details of the life insurance benefits would be found specifically in the Summary Plan Description. (*Id.*). She indicated that although the Summary Plan Description was not handed out to employees during the benefits orientation meetings, "[i]t is located on-line or they can come in and get a hard copy at HR, referencing Human Resources." (Tr. at 47). She further testified that employees have to sign an acknowledgment stating that they know where they can obtain a copy of the Summary Plan Description. (Tr. at 47).

Plaintiff also offered, and the Court admitted, exhibit six, which consists of several of Miller's signed acknowledgments. These acknowledgments related to Miller's receipt of the employee handbook and his attendance at a seminar entitled "Sexual Harassment in the Workplace."[2] Although Ms. Gonzalez testified that "[y]ou do have to sign that you

---

[2] Exhibit six consists of three separate signed acknowledgments by Miller each representing his receipt of different revisions or editions of Defendant's "Associate Handbook." (*See* Ex.6).

5

acknowledge - - that, you know where to get a copy of that [Summary Plan Description] from," (Tr. at 47), there was no testimony or other evidence introduced proving that Miller acknowledged receiving a copy of the Summary Plan Description or any information about the details in the Summary Plan Description, including his right to convert the group life insurance to individual coverage. Ms. Gonzalez further testified that she does not recall whether the conversion privilege was discussed during any of the benefit orientation meetings. (Tr. at 47).

Relying on this evidence, Plaintiff argued that because Defendant had a duty to provide the Summary Plan Description to Miller, it is Defendant's burden to prove that in fact they fulfilled that duty. This Court disagrees. Although it is true that Defendant, as it acknowledged, had the duty to provide the Summary Plan Description to plan participants, in order for Plaintiff to recover damages in this case, it is Plaintiff's burden to prove, by a preponderance of evidence, all of the elements of the cause of action and that burden includes the burden to prove that Defendant failed to provide the Summary Plan Description. Furthermore, assuming, without deciding, the evidence offered by Plaintiff did prove that Miller never received the Summary Plan Description, Plaintiff's claim fails for lack of causation as described below.

**B. Negative Duty Not to Misinform**

With respect to Plaintiff's claim that Miller was misled, the Sixth Circuit has stated that the negative duty not to misinform is triggered when an employer "*on its own initiative* provides inaccurate and misleading information about future benefits of a plan." *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 455 (6th Cir. 2002)(emphasis in original). To

6

establish such a claim, Plaintiff must prove, among other elements,[3] that the misrepresentations were material. *James*, 305 F.3d at 449. "[A] misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision in pursuing [] benefits to which she may be entitled." *Krohn*, 173 F.3d at 547 (citations omitted).

Plaintiff argued the alleged misrepresentations were contained in three different documents. With regard to two of the documents, Plaintiff testified that Defendant sent two letters to Miller's parents, which each stated that benefits in general were being extended for six months consecutively. (Tr. at 14). On cross examination, however, Plaintiff stated that there was no specific description of life insurance contained in these letters. (Tr. at 19).

Furthermore, Plaintiff introduced, as exhibit two, what has been referred to as the Military Leave Policy.[4] The parties agree the Military Leave Policy was received by Miller prior to his final deployment. In closing argument, Plaintiff argued that this document misrepresents the benefits available. The document begins by stating:

> With the continuing concerns, we know that some of you may be called to active duty. The following is a summary of YNA's military leave policies. Hopefully this memo will answer any of the questions you may have. Yazaki North America recognizes

---

[3]In addition to proving the misrepresentations were material, Plaintiff must show: "that the defendant was acting in a fiduciary capacity when it made the challenged representations . . . and [] that the plaintiff relied on those misrepresentations to their detriment." *James*, 305 F.3d at 449. To the extent that Plaintiff is claiming that the alleged misrepresentations were contained in the letters sent to Miller's parents and the statements made in the Military Leave Policy (Pl.'s Ex. 2), this Court believes, and Defendant does not argue otherwise, that Defendant was acting in its fiduciary capacity. Furthermore, the Court will address the "reliance" element below when it addresses causation.

[4]The Military Leave Policy is an inter-office memorandum, dated February 21, 2003, that was circulated to those employees who were in the military.

7

> those associates who serve in our Nation's military and will apply the following benefits for associates who are called to training or active duty in the uniformed services of the United States . . .

(Pl.'s Ex. 2). The document then goes on to describe life insurance benefits in the following manner:

> Group Life, and if applicable, Optional Life Insurance coverage will continue for 20 days following the date your military duty begins. Coverage will be reinstated upon your return to active employment within 90 days of discharge from active duty.

(*Id.*). Plaintiff then argued that the lack of any mention of the right to convert group life insurance should be compared with the document's description of health insurance benefits, which includes:

> Health benefits will continue for up to six months. Associate contributions for health insurance will continue to be deducted from your salary if your pay is supplemented. If you are not receiving supplemental pay, arrangements for paying your health care contributions should be made prior to your military departure.
>
> After six months, you may continue health care coverage if you opt to pay the full premium for the coverage. For more information regarding your health care continuation rights (COBRA), contact Linda Tarolli, Benefits Specialist, Human Resources Department. Charges incurred as a result of injury while on active duty are not covered.

(*Id.*).

The Court need not decide whether Plaintiff has met her burden of proving that Miller was misled by either the letters sent to his parents or the Military Leave Policy, because as provided in detail below, Plaintiff has not met her burden in proving causation.

**II.   Causation**

Another element Plaintiff must establish to prevail on either theory of an ERISA breach of fiduciary duty is causation. In other words, "there must be a showing of some causal link

8

between the alleged breach . . . and the loss plaintiff seeks to recover.'" *Allison v. Bank One – Denver*, 289 F.3d 1223, 1239 (10th Cir. 2002)(quoting *Silverman v. Mut. Benefit Life Ins. Co.*, 138 F.3d 98, 104 (2d Cir. 1998))(citing *Whitfield v. Lindemann*, 853 F.2d 1298, 1304-05 (5th Cir. 1998) & *Brandt v. Grounds*, 687 F.2d 895, 898 (7th Cir. 1982)).[5]

To support of her causation argument, Plaintiff testified about her conversations with Defendant involving his decision to keep her on the insurance policies. She offered e-mails evidencing these conversations, which are part of the admitted exhibit five. In one e-mail, dated March 3, 2004, Miller stated, "I am not going to remove you from insurance or my life insurance, or anything." (Ex. 5A). In another e-mail, dated March 25, 2004, Miller stated, "I have enough life insurance through the military and various other organizations. I'm not changing the name on the policy so that isn't an issue." (Ex. 5B). In addition, the Plaintiff offered the e-mail of September 7, 2004, in which Plaintiff asked Miller, "Did you still want to keep me on your insurance policies as beneficiary?" (Ex. 5C). To which Miller responded, "Yes. There is no point in changing it." (*Id.*). Finally, Plaintiff offered the e-mail of October 4, 2004, in which Miller stated, "If I go back on active duty, than [sic] you may have the full insurance if I don't change the paperwork." (Ex. 5D).

Plaintiff testified with respect to the e-mail of March 25, 2004 (Ex. 5B), that she knew that she was a beneficiary on a life insurance policy because, "He told me. . . .That he had kept me as beneficiary on the Yazaki insurance policy. He wasn't married or engaged to this other woman at that time." (Tr. at 33). She further testified that this conversation took place,

---

[5] As stated above, the third element required to prove a breach of fiduciary for providing false or misleading information to a plan participant is that the plan participant relied on the misrepresentation to his or her detriment. *James*, 305 F.3d at 449.

9

"prior to - - two days before the separation paperwork was filed." (Tr. at 34).

Plaintiff and Miller separated on March 27, 2004 and later filed for a divorce. (Tr. at 34). The divorce became final on October 7, 2004. (Tr. at 38). Furthermore, Plaintiff testified that Miller remarried on April 21, 2005. (*Id.*). Miller's leave to return to active duty commenced on November 15, 2004. (*See* Ex. 1). Therefore, the March and September e-mails (Ex. 5B & C) are the only e-mails that occurred before the divorce. All the other e-mails occurred after the divorce, but prior to Miller's remarriage.

Plaintiff further testified that she was the beneficiary on the military policy in March 2004, but Miller changed the beneficiary on the military life insurance policy in April 2005. (Tr. at 36). Plaintiff also testified that although she had been named on the military life insurance policy, after his second marriage, Miller changed the beneficiary on that policy and named his children as primary beneficiaries and his second wife as a contingent beneficiary. (*Id.*).

There was no evidence offered as to what the costs would have been to Miller if he had converted to an individual policy, but obviously, it would have been a personal expense. In addition, neither party offered evidence on whether an individual policy would have or would not have included an exclusion for a death that occurred during military service.

In this Court's opinion, it would be pure speculation to conclude that when Miller began his military leave, and after his remarriage, he would have exercised his right to convert to an individual policy, at his own expense, and name his ex-wife as beneficiary. The fact that he removed his ex-wife as beneficiary from the military policy after he was remarried is certainly an indication that he would not have taken out a new policy at that time

10

and named his ex-wife as beneficiary. Furthermore, as Plaintiff testified, her conversation with Miller in which he indicated that he was going to keep her as a beneficiary on his life insurance policy took place before he was married or engaged to his second wife. (Tr. at 33).[6]

Based on the evidence presented, Plaintiff has not persuaded this Court, by a preponderance of the evidence, that Miller would have listed Plaintiff as a beneficiary on the individual life insurance policy had he exercised his right to convert. All of the e-mails and conversations with respect to keeping her on the life insurance policy took place before he was remarried.

The fact that after Miller remarried, he changed the beneficiary on the military policy from Plaintiff to his then current wife strongly suggests to this Court that it is unlikely that had he converted to an individual policy at the time of his return to active duty he would have named his ex-wife as beneficiary on that policy. The Court can see no reason why he would have taken out an individual policy, paid for that policy with his own funds, and named Plaintiff as beneficiary on that policy when in fact he had taken her off the military policy and substituted his then current wife as beneficiary.

All the evidence offered by Plaintiff with respect to Plaintiff's claim that Defendant breached its fiduciary duty may be sufficient for Plaintiff to meet its burden of proof by a preponderance of the evidence that Defendant breached its fiduciary duty. However, Plaintiff's claim must fail, because Plaintiff has clearly not persuaded this Court, by a

---

[6]Plaintiff was referring to Miller's statement in the e-mail of March 3, 2004, where he said, "I'm not going to remove you from insurance on my life insurance or anything." (Ex. 5C).

11

preponderance of evidence, that Miller would have exercised the right to convert to an individual policy and named Plaintiff as the beneficiary.

For the reasons set forth above, this Court shall enter a verdict in favor of Defendant.

Date: November 27, 2006

          s/PATRICK J. DUGGAN
          UNITED STATES DISTRICT JUDGE

Copies to:
Michael J. Gildner, Esq.
K. Scott Hamilton, Esq.

12